## GEIGER v. TACOMA RY. & POWER CO.

### (Circuit Court, W. D. Washington, W. D.   October 14, 1905.)

COURTS—CREATION OF FEDERAL COURTS—CONSTRUCTION OF ACT DIVIDING DISTRICT OF WASHINGTON.

Act March 2, 1905, c. 1305, pt. 1, 33 Stat. 824, dividing Washington into two judicial districts, interpreted consistently with the practice of Congress and the judicial history of the country and the general laws in force relating to the federal judiciary and the jurisdiction and powers of the federal courts and judges, lacks none of the essentials of a sufficient organic law, and the Circuit and District Courts of the Western District of Washington as thereby created are the same courts as those previously existing in the District of Washington, having the same judges and officers and the same powers and jurisdiction within that part of the original district remaining after the Eastern District had been carved therefrom, and being still within the boundaries are constituent parts of the Ninth judicial circuit. While the act does not "ordain and establish" courts in said Western District as required by Const. art. 3, § 1, in express words, nor define their jurisdiction and powers further than to fix their terms, nor assign the district to either of the nine judicial circuits, nor provide for the appointment of judges and officers therein, otherwise than by providing that the district judge and officers of the District of Washington then in office shall be the district judge and officers of the Western District, the intention of Congress in respect to all such matters is clear from the act, and the provisions necessary to carry out such intention, which are not expressed, are to be implied.

### At Law.

Action to recover damages for personal injury. This case was pending in the United States Circuit Court for the District of Washington, in the Western Division of said District, on the 2d day of March, 1905, on which date the act of Congress dividing the state of Washington into two judicial districts went into effect, and pursuant to that statute the case was transferred and the record certified to the United States Circuit Court for the Western District of Washington, and was tried before the court and a

jury at the July term, 1905, of said court, resulting in a verdict in favor of the plaintiff, upon which a judgment was entered. Upon the hearing of a petition for a new trial, subsequent to judgment, the defendant challenged the validity of the judgment, and of all the proceedings subsequent to the 2d day of March, 1905, and denied the legal existence of the court, on the ground that Congress has not ordained and established a United States Circuit Court for the Western District of Washington. Objections for alleged lack of jurisdiction overruled, and petition for a new trial denied.

E. E. Cushman, for plaintiff.
C. O. Bates and Walter M. Harvey, for defendant.

HANFORD, District Judge. An attack upon the jurisdiction of this court has been made, and its existence denied, in an irregular manner, upon the argument of a petition for a new trial after a judgment in favor of the plaintiff had been entered. The formalities of procedure, however, are not important in consideration of questions affecting jurisdiction, and especially so when the constitutionality of the court is made the subject of a controversy.

It is first in order to make a concise statement of the defendant's contention and the questions submitted for decision, and I deem the following a fair statement: The first section of the third article of the Constitution of the United States provides that:

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. * * * "

By this provision, the Supreme Court is the only national court which can exist without the exercise of the creative power vested in Congress, and all other courts, in which the national judicial power is, or may be, vested, must of necessity come into being by virtue of statutes duly enacted by Congress, and the courts of the United States, inferior to the Supreme Court, have only the powers and jurisdiction conferred by acts of Congress. The jurisdiction of a court, both as to matter and the territorial limits thereof, may be enlarged from time to time by acts of Congress, and, in like manner, diminished, but a national court as a distinct entity cannot be a product of evolution, nor can its origin be veiled in the dimness and forgetfulness of time. Therefore, if this court has a legal existence, there should be found somewhere in the body of the statutes enacted by Congress words appropriate to express a positive intention on the part of Congress to "ordain and establish" it as one of the courts composing the judicial system, and to clearly define its jurisdiction.

"A court" has been defined to be an incorporeal being, and as that body in the government to which the public administration of justice is delegated. It is in this sense that the word "courts" in the Constitution must be understood, and consistently with the general plan of our government and the judicial history of our country the courts ordained and established by Congress, pursuant to the Constitution, should be organized tribunals, their existence should be perpetual, and they should have the administrative and judicial powers pertaining to courts of judicature, and adequate to the efficient administration of justice within the scope and range of national responsibility.

A law which only makes provision for terms of court to be held at specified times and places is inadequate to constitute a court having the attributes of continuity and permanence of existence necessary to be possessed by every court designed to perform the judicial functions of the government within a district. The creation of a judicial district with defined boundaries does not of itself establish any description of tribunal, and a fortiori does not establish a Circuit Court of the United States. Conformably to the Constitution of the United States, all federal judges must be appointed by the President, by and with the advice and consent of the Senate, and hold their positions during their good behavior. A law which purports to fill the office of judge of a newly created judicial district by designating as the incumbent of that office a judge of a different district is as much a departure from the constitutional method of making appointments to the judiciary as would be the designation of a district attorney or collector of customs to be judge of a district. Moreover, without a clear declaration of a specific purpose to do so, there can be no legitimate presumption of an intention on the part of Congress to organize a United States Circuit Court with only a district judge to preside therein, when every other judicial district in the United States is assigned to one of the nine circuits, and circuit judges and a member of the Supreme Court are members of the Circuit Court in each of the other districts. By the foregoing fundamental principles, the organic law of the Western District of Washington must be tested for the determination of the question now raised as to whether a United States Circuit Court does or does not exist therein. The act of Congress entitled "An act to divide Washington into two judicial districts," approved March 2, 1905, c. 1305, pt. 1, 33 Stat. 824, is the organic law, and the whole thereof, because previous to its enactment there was no Western District of Washington, and there has been no subsequent legislation affecting the question. This statute provides that all that portion of the state of Washington which includes certain named counties, with the waters thereof, and all Indian reservations therein—

"Is hereby detached from the judicial district of Washington, and made a separate judicial district, and shall be called the 'Eastern District of Washington,' and the residue of said state of Washington, with the waters thereof, shall hereafter be the 'Western District of Washington.'"

The second section of the act provides that the District Judge of the judicial district of Washington in office at the time this act takes effect shall be the District Judge for the Western District of Washington, and that the clerk of the Circuit Court, the clerk of the District Court, the district attorney, assistant district attorneys, marshal, deputy marshals, deputy clerks, and referees in bankruptcy resident in said Western judicial district of Washington shall continue in office, and be such officers in said Western District until the expiration of their respective terms of office, or until their successors shall be duly appointed and qualified. Section 6 of the act provides that the office of marshal, district attorney, deputy marshals, assistant district attorneys, and all other officers authorized by law and made necessary

by the creation of two districts and all vacancies in either of said districts shall be filled in the manner provided by law, and provides for the compensation of all the officers of the two districts, except judges. The act does not by apt words ordain and establish either a District Court or a Circuit Court in either of the two districts, and, without having in any preceding section mentioned a District or a Circuit Court, the seventh section provides that all causes and proceedings of every name and nature, except criminal, now pending in the courts of the judicial district of Washington, shall be transferred to and proceeded with in the Eastern and Western judicial districts, respectively. That part of the section relating to the Western District reads as follows:

"And all causes and proceedings of every name and nature, except criminal, now pending in the courts of the judicial district of Washington as heretofore constituted, whereof the courts of the Western judicial district of Washington as hereby constituted would have had jurisdiction if said district and the courts thereof had been constituted when said causes or proceedings were instituted, shall be, and are hereby, transferred to and the same shall be proceeded with in the Western judicial district of Washington as hereby constituted, and jurisdiction over the same is hereby vested in the courts of said Western judicial district, and the records and proceedings therein and relating to said proceedings and causes shall be certified and transferred thereto: Provided, that all motions and causes submitted, and all causes and proceedings, except criminal, including proceedings in bankruptcy, now pending in said judicial district of Washington as heretofore constituted, in which the evidence has been taken in whole or in part before the present district judge of the judicial district of Washington as heretofore constituted, or taken in whole or in part and submitted and passed upon by the said district judge, shall be proceeded with and disposed of in said Western judicial district of Washington as constituted by this act."

Section 8 provides that regular terms of the "Circuit and District Courts of the United States for the Western District of Washington" shall be held at the times and places therein specified.

Section 9 provides: "That the terms of said courts shall not be limited to any particular number of days, nor shall it be necessary to adjourn by reason of the intervention of a term elsewhere; but the court intervening may be adjourned until the business of the court in session is concluded."

Section 11 repeals all other laws so far as inconsistent with the provisions of this act, and section 12 provides that the act shall take effect immediately after its approval by the President. Sections 3, 4, and 5 relate exclusively to the Eastern District, and section 10 relates exclusively to prosecutions for offenses committed prior to the date of the act. Having set forth substantially the provisions of this law, it is to be especially noted that there is an omission of the creative words which an observance of the Constitution would indicate as appropriate and necessary to ordain and establish courts. There is also an omission of any general provision defining the jurisdiction and powers of courts within either of the two newly organized districts. The act fails to confer upon the courts mentioned jurisdiction and power co-extensive with that of other District and Circuit Courts of the United States; the only jurisdiction conferred being limited to causes and proceedings pending at the time of the

enactment, except as provided in the tenth section relating to offenses previously committed. The act also omits any provision assigning the newly created districts to either of the nine judicial circuits of the United States, and omits any reference to the Circuit Judges and Justices of the Supreme Court. In view of these defects in the law, there is no United States Circuit Court for the Western District of Washington, unless by judicial construction there shall be read into the law a presumption of intention on the part of Congress to ordain and establish District and Circuit Courts by merely assuming that they would necessarily come into existence to fit into and fill out the organization of the two districts which the act creates. It is the defendant's contention, however, that inferences and presumptions are not permissible for the purpose of supplying apparent omissions in statutes of words essential to create new courts and confer jurisdiction upon them, under the Constitution of the United States.

This court does in fact exist, and it has been recognized and its jurisdiction invoked by litigants and the executive department of the government. The Supreme Court of the United States, as well as the Circuit Court of Appeals for the Ninth Circuit, has treated it as a lawfully established Circuit Court of the United States, subject to the appellate jurisdiction of those tribunals, by issuing writs of mandate directing judgments affecting important rights to be entered in accordance with their decisions, and, on the ground that the court cannot cease to perform its functions, it might decline to listen to the defendant's invitation to declare itself nonexistent, and pass the questions up to the appellate courts for final determination, but I deem it my duty to render a decision and give reasons for overruling the defendant's protest.

In deciding the question submitted, I am required to ascertain the object which Congress had in view when the statute under consideration was enacted, and to give effect to the legislative will, as expressed by its provisions. The crudeness of this piece of legislation must be admitted, and from its crudeness arises the necessity for judicial construction. A law is not to be ignored nor set aside as a nullity merely because its meaning is obscured by imperfections in its composition. If enough is expressed to enable intelligent minds to ascertain the legislative will, necessary inferences must be drawn to supply omissions and correct apparent defects. It is impossible to be mistaken with regard to the real object of this law, when a view is taken of the conditions and circumstances which prompted its enactment. The state of Washington was admitted into the Union of states on an equal footing with the original states, and by the enabling act it was made a judicial district and attached to the Ninth Judicial Circuit. The powers and jurisdiction of other Circuit and District Courts were conferred upon a Circuit Court and a District Court for said district. Pursuant to that law and the compact contained in the state Constitution, Washington entered the Union, and thereafter the Circuit and District Courts were organized, and through them the national government performed its judicial functions within the state. The district being large, and the volume of

business too great for one Circuit Court and one District Court, there was need for additional courts for the prompt and efficient adminis- tration of the national laws within the state, and to meet that exigency the·statute of March 2, 1905, was enacted. It is certain that the in- tention of Congress was to reorganize, and not to disorganize, the national judiciary within this state. If the law might be considered as an act which in effect abolished the previously existing courts with- out establishing successors of each in both districts, it would be both absurd and unconstitutional, because it would deprive the govern- ment of the instrumentality essential for the performance of an im- portant part of its functions within the state, and that would be a vio- lation of the compact which permanently binds Washington to the other states as a member of the Union. For that reason, the law must be construed in a way to assert the continued existence of courts competent to enforce the national laws within the state of Washington, and preserve uniformity in the operations of the govern- ment in all the states. To that end, it is imperatively necessary.to import into the statute a legislative intention to continue all the ju- dicial power theretofore vested in a Circuit Court and a District Court, but to be exerted through a Circuit Court and a District Court for each of the two districts which the act creates. That intention is plainly indicated by the provisions of the act retaining the District Judge and district officers of the district as previously constituted, and their successors, in service in their respective positions, and by the sections which provide for terms of both Circuit and District Courts, to be held in each of the two districts. The scheme of es- tablishing federal courts by assumption and necessary implication is not new, and the lack of a plain declaration in words apt for the purpose of ordaining and establishing courts is not peculiar to this particular statute. Slovenliness of style and inaccuracy in the use of words and phrases, and the omission of important provisions, are noticeable in many of the judicial statutes. I will cite only a few of the many instances to be found in the laws as originally enacted. See an act to establish the judicial courts of the United States (Act Sept. 24, 1789, c. 20, 1 Stat. 73); an act to provide Circuit Courts for the Districts of California and Oregon, and for other purposes (Act March 3, 1863, c. 100, 12 Stat. 794); an act to provide for a District Court and a Circuit Court of the United States for the District of Nevada, and for other purposes (Act Feb. 27, 1865, c. 64, 13 Stat. 440); an act to detach certain counties from the United States ju- dicial district of California, and to create the United States judicial district of Southern California (Act Aug. 5, 1886, c. 928, 24 Stat. 308 [U. S. Comp. St. 1901, p. 324]); an act to amend the Revised Statutes of the United States relating to the Northern District of New York, to divide the same into two districts, and provide for the terms of court to be held therein, and the officers thereof, and the dis- position of pending causes (Act May 12, 1900, c. 391, 31 Stat. 175 [U. S. Comp. St. 1901, p. 395]); an act to divide the state of West Virginia into two judicial districts (Act Jan. 22, 1901, c. 105, 31 Stat. 736 [U. S. Comp. St. 1901, p. 440]); an act to divide Kentucky

into two judicial districts (Act Feb. 12, 1901, c. 355, 31 Stat. 781 [U. S. Comp. St. 1901, p. 360]).

Beginning with those of recent date, I find that the act creating the Western District of New York, and the acts dividing the Districts of West Virginia and Kentucky, found on pages 175, 736, and 781 of the thirty-first volume of United State Statutes, are similar in every important particular to the statute under consideration. It is regrettable, however, that those statutes should have been taken as models, instead of the act creating the Middle District of Pennsylvania, and establishing courts therein, found on page 880 of the same volume (Act March 2, 1901, c. 801 [U. S. Comp. St. 1901, p. 405]). The act relating to the state of Nevada constituted that state a judicial district, and provided for the appointment of a District Judge, marshal, district attorney, and for clerks and deputies, and attached the district to what was then the Tenth Circuit, now the Ninth Circuit, and prescribed the place and times for holding terms of the Circuit Court of the United States and of the District Court of the United States for said district, and conferred upon the District Court of the United States for the District of Nevada, and the judge thereof, and upon the Circuit Court of the United States for said District of Nevada, and the judge thereof, the same powers and jurisdiction in said district which are vested in said courts and judges of the United States in the other districts of the Tenth Circuit. The act does not by express words ordain and establish a Circuit Court or a District Court otherwise than by creating a district, providing for the officers necessary to organize courts, prescribing the terms of a District Court and a Circuit Court to be held, and conferring jurisdiction and judicial power upon the courts and judges.

The Circuit Courts for the Districts of California and Oregon were organized pursuant to acts of Congress, approved March 3, 1863 (12 Stat. 794, c. 100). In lieu of a clear declaration establishing a Circuit Court to exist continuously in each of said districts, the effective words of that statute are as follows:

"And there shall hereafter be Circuit Courts held for the districts of the states of California and Oregon by the Chief Justice, or one of the Associate Justices of the Supreme Court of the United States assigned or allotted to the circuit to which such districts may respectively belong, and the District Judges of such districts, severally and respectively, either of whom shall constitute a quorum, which Circuit Courts, and the Judges thereof, shall have like powers and exercise like jurisdiction as other Circuit Courts, and the judges thereof."

The act of August 5, 1886, c. 928, 24 Stat. 308 [U. S. Comp. St. 1901, p. 324], by which the Southern District of California was created, contains no clause creating courts or conferring jurisdiction other than the provisions establishing the new district, and providing for the appointment of a district judge and officers for the new district, and designating the times and places for holding terms of the Circuit and District Courts. That law deserves commendation in one particular. It does not disturb the previously existing courts in California, except to the necessary extent of cutting off part of their territorial jurisdiction, and substituting "Northern District of

California" for "District of California" as the designation of the original district. It detaches from the district as previously existing certain named counties, but omitted to attach the new district to the Ninth Circuit, or any circuit, and it did not designate the judges authorized to hold the Circuit Court therein, unless inferentially by providing: "That the Circuit and District Judges of said Southern District of California shall each, respectively, appoint a clerk for their respective courts." It is only by reason of the fact that the territory comprised within the Southern District of California was within the Ninth Circuit, and is geographically situated so as to be conveniently attached to the Ninth Circuit, and because the act did not express an intention to change the boundaries of the circuit, that said district can be considered as being, by legal implication, a constituent of the Ninth Circuit.

Judiciary Act 1789, c. 20, 1 Stat. 73, under which the federal courts were first organized, created 13 judicial districts, and created a district court for each, and also made provision for terms or sessions of said courts, but it contains no similar words creating or establishing Circuit Courts as permanent, organized bodies. The Circuit Courts originally came into existence by virtue of a clause in the fourth section of the act, which reads as follows:

"And that there shall be held annually in each district of said circuits, two courts, which shall be called Circuit Courts, and shall consist of any two justices of the Supreme Court, and the district judge of such districts, any two of whom shall constitute a quorum."

It has never been supposed that this provision of the first judiciary act required two Circuit Courts to be organized annually in each district, although that is the literal effect, if the word "courts" as there used means organized judicial bodies. If that definition is not comprehended in the sentence, there is no provision in the act whereby the Circuit Courts were established. In the practical interpretation of the law by the operation of the government under it, the words "two courts" mean two terms of a court and the sense of the law is the same as it has been rendered by the compilation of the Revised Statutes of the United States. The same formula by which the Circuit Courts were originally established has been copied substantially in a number of acts of Congress creating additional Circuit Courts. See the act relating to North Carolina (Act June 4, 1790, c. 17, 1 Stat. 126); the act relating to Rhode Island (Act June 23, 1790, c. 21, 1 Stat. 128); the act relating to Vermont (Act March 2, 1791, c. 12, 1 Stat. 197); the act to amend the judicial system of the United States (Act April 29, 1802, c. 31, 2 Stat. 156); the act establishing Circuit Courts in the Districts of Kentucky, Tennessee, and Ohio (Act Feb. 24, 1807, c. 16, 2 Stat. 420). In all of the instances cited Congress has exercised the power to ordain and establish Circuit Courts, by enacting laws creating districts, and, except in the act establishing the Southern District of California, designating the judges to be constituent members of courts styled "Circuit Courts," and providing for the other necessary officers in each district, and fixing the places and dates for holding terms of said courts, and defining their powers

and jurisdiction, except the acts cited which divided the districts of California, New York, West Virginia, and Kentucky. In the new districts which those acts established, the courts must derive their powers from laws under which the national judicial system originally took root, or else from the Revised Statutes of the United States, and subsequently enacted general laws defining the jurisdiction and powers of United States courts and judges. Notwithstanding the omission in each of said laws of accurate words to ordain and establish or create a Circuit Court in each district, the judges, attorneys, marshals, and clerks organized the Circuit Courts, and they have exercised the powers and jurisdiction conferred. They exist in fact and rightfully, although the constitutionality of their existence rests upon necessary implications and legal presumptions. The method, however, of establishing courts, by taking for granted that they will spring into existence naturally to fill the places provided for them in the judicial system, has been sanctioned by time and by the vast importance of the judgments and decrees which they have rendered. It is too late now to question the lawfulness of their existence, although it may not be possible to deny the logic of an assailing argument based upon the postulates that no court inferior to the Supreme Court of the United States can exist constitutionally, until it shall have been ordained and established by a law enacted by Congress, and that a law effective to confer judicial power upon a tribunal not in being must, in positive words, clearly express the legislative will to both create the tribunal and confer the power.

The District of Washington included within its boundaries the whole state of Washington, and it was all within the Ninth Judicial Circuit. As the act dividing the district does not by any express provision, nor by implication, change the boundaries of the circuit, nor diminish the jurisdiction of the appellate courts, nor impair the powers of the justices and judges thereof, the general laws of the United States relating to the jurisdiction, powers, and duties of the Supreme Court and its members, and of the Circuit Court of Appeals, and circuit judges have the same force in both districts now as previous to the division, and the Justice of the Supreme Court allotted to the Ninth Circuit, and the Circuit Judges of the Ninth Circuit, are all members of this court.

The peculiar situation in which I am placed by the defendant's protest at this stage of the case compels me to assign reasons for asserting the lawful authority of the district judge as a member of this court. Perhaps I am magnifying the importance of this matter; but, in view of the many surprises in the decisions of the appellate courts of jurisdictional questions, it behooves the nisi prius courts to look well to the foundation upon which their jurisdiction rests, in every case when a doubt is suggested, and I am constrained to consider the questions raised by the defendant's protest seriously.

Now, as to the question whether there is or is not a lawfully appointed district judge for the Western District of Washington. My appointment as a District Judge was made by the President and confirmed by the Senate, and my tenure is during good behavior, and I

141 F.—12

hold a commission issued by the President. The district for which I was appointed originally included within its boundaries all of the territory now constituting the Western District of Washington, and my residence is within that district. There was within the state of Washington one complete organization—division of the district made necessary only one additional organization—and the act provides for only one new set of district officers, and by express provisions retains the existing organization, intact, for service in the Western District, and the only important change effected by the law is the establishment of one new district, with officers necessary to organize the new courts therein. Realities do not give way to mere theories, and the real substantial fact of controlling importance in the determination of this branch of inquiry is that the judicial district originally established when the state of Washington was admitted into the Union, and the courts therein are not changed by the act dividing the district, except in name and by the severing of part of the territory thereof, and the consequential diminution of territorial jurisdiction. The assignment of the District Judge to serve as judge of a district thus reduced is not the same thing as an attempt to make an original appointment of a particular person to a newly created office by an act of Congress, and does not violate the Constitution. A decision to the contrary would necessarily rest upon a theory which would impeach the constitutionality of the Circuit Courts of Appeals of all the nine circuits, for the act creating those courts designates the judges composing them, and all the Circuit Courts in the United States are vulnerable to the same objection, for they all exist by virtue of acts of Congress which designate the judges thereof.

The act of March 2, 1905, dividing Washington into two judicial districts interpreted consistently with the practice of Congress and the judicial history of the country, and the general laws in force relating to the federal judiciary and the jurisdiction and powers of the federal courts and judges, lacks none of the essentials of a sufficient organic law, and I hold that this court exists legally and is, in fact, the same United States Circuit Court in which this action was originally commenced. Its title has been changed to conform to the change made by detaching part of the territory previously within its jurisdiction to form a new district, but in other respects it is the same court, having the same judges and officers, and the same power and jurisdiction within the remaining part of its territorial jurisdiction that it had previous to the division of the district, and it is still within the boundaries of the Ninth Judicial Circuit, and a constituent thereof.

I direct that an order be entered overruling the defendant's protest and denying the petition for a new trial.